UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **RICHARD PU, et al.,** | : | |
| | : | |
| Plaintiffs, | : | **OPINION AND** |
| | : | **ORDER** |
| - against - | : | |
| | : | **08 Civ. 10084 (RJH) (RLE)** |
| **GREENTHAL MANAGEMENT CORP., et al.,** | : | |
| | : | |
| Defendants. | : | |

**RONALD L. ELLIS, United States Magistrate Judge:**

## I. INTRODUCTION

This action arises from a special assessment by Trafalgar House Condominium Association ("Trafalgar House") that Plaintiff, Richard Pu, alleges was collected in knowing violation of the building's bylaws. Pu brings claims individually and on behalf of others similarly situated, but also asserts this action is in part derivative. He alleges that Defendants have violated the federal racketeering statute, 18 U.S.C. § 1961 *et seq.* ("RICO") and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"); and have committed the following state law violations: breach of fiduciary duty, breach of the Trafalgar House bylaws, breach of the management agreement, breach of the duty of good faith and fair dealing, fraud, aiding and abetting fraud, deceptive business practices, negligent misrepresentation, negligence, conversion, and trespass.

On or about December 4, 2008, Pu moved to disqualify Seyfarth Shaw LLP ("Seyfarth") from representing any defendant other than itself in this case. For the reasons set forth below, Pu's motion is **DENIED.**

## II. BACKGROUND

On November 20, 2008, Pu filed his Complaint in the instant case. Pursuant to the federal and local rules and the personal practice rules of District Judge Holwell, Defendants wrote to the Court on December 11, 2008, requesting a pre-motion conference to file a Motion to Dismiss in lieu of answering the Complaint. In his Complaint, Pu identifies himself as a lawyer living and working out of his condominium apartment, a unit within Trafalgar House Condominium. (Compl. ¶ 2.) He asserts that he brings this claim as an individual unit owner, in a representative capacity on behalf of the condominium association, and on behalf of a class of one hundred (100) other unit owners. (Compl. ¶ 1, App. at 3.) Pu maintains that Trafalgar House violated its bylaws by failing to obtain the consent of the mortgagee banks which financed the purchase of individual units as is required before imposing an assessment greater than $100,000. (Pls.' Mem. in Supp. of Mot. to Disqualify ("Pls.' Mem."), Dec. 4, 2008 at 3 (referencing Compl. ¶ 10, App. at 7).) Among the Defendants named in this case are: 1) Trafalgar House Condominium Association; 2) Charles H. Greenthal Management Corporation ("Greenthal"), management for Trafalgar House; 3) Michaele McCarthy, a Greenthal employee; 4) Mark Adkins, President of the Board of Managers of Trafalgar House; and 5) Seyfarth Shaw LLP ("Seyfarth"), Trafalgar House's counsel during part of the relevant period.[1] Seyfarth has indicated its intent to represent these five Defendants. It is this representation that Pu challenges, arguing that Seyfarth must be disqualified as its representation would violate the New York Lawyer's Code of Professional Responsibility, namely Disciplinary Rules 5-101 and 5-102, presently codified as N.Y. COMP. CODES R. & REGS. tit. 22, §§ 1200.20 & 1200.21 (1999),

---

[1] The final Defendant is Dru White, Trafalgar House's counsel until June 2008, who is being separately represented in this action by his partner Kenneth Thomas of Thomas & White.

respectively.

Because of the current posture of this case, the only information on the record comes to the Court through Pu's Complaint, a few brief communications from Defendants' respective counsel, and the briefing papers for the instant motion. Following are the relevant allegations presented to the Court.

Pu asserts that Defendants have perpetrated a scheme "to collect an unauthorized assessment to finance certain renovations" that is actionable under the RICO Statute. (Pls.' Mem. at 3.) This alleged scheme is the result of a special assessment of $380,000 imposed by Trafalgar House in the fall of 2007 to repair its common hallways, which had not been repaired for nearly fifteen years. (Compl. ¶¶ 22 & 26; Mem. of Law on Behalf of Defs. Greenthal, McCarthy, Trafalgar House, Adkins & Seyfarth in Opp'n to Pls.' Mot. to Disqualify Seyfarth Shaw LLP ("Defs.' Opp'n"), Jan. 9, 2009 at 4.) The bylaw at issue requires Trafalgar House to obtain the approval of more than two-thirds (2/3) of unit owners and their mortgagees for expenditures in excess of $100,000 for "alterations, additions or improvements." (Defs.' Opp'n at 4-5 (referencing Compl. ¶¶ 10, 11 & 14).) Pu alleges that Trafalgar House and Greenthal attempted to comply with the bylaw by securing the consent of the mortgagees and failed, but went forward and imposed the assessment on the unit owners anyway. Defendants argue the repair was just that, restoration of existing common elements, and did not implicate the bylaw provision. However, they argue that prior to the assessment being imposed, in an "abundance of caution," Trafalgar House, with the assistance of Greenthal, and its then counsel, Defendant White, sought and obtained the approval of 76% of the common interests, in writing. (Defs.' Opp'n at 5.) Seyfarth was retained by Trafalgar House between June and July of

3

2008.[2] (*Id.*; Declaration of Barry H. Mandel ("Mandel Decl."), Jan. 8, 2009, ¶ 4; Declaration of Mark Adkins ("Adkins Decl."), Jan. 8, 2009, ¶ 2; *see also* Pls.' Mem. at 4; Compl. ¶ 6, App. 6.) Pu states that he became aware on or around September 26, 2008, that the mortgagee consent had not been obtained. (Pls.' Mem. at 4; Compl. ¶ 44, App. at 17.) He alleges that Seyfarth was complicit in Trafalgar House's collection of some of the final monthly installments of the assessment at issue, in particular the October 2008 collection. (Pls.' Mem. at 5.) Pu argues that Seyfarth then took charge of the coverup of the illicit assessment and collection and participated in key conversations with Trafalgar House's Board at board meetings attended by McCarthy, who Pu asserts is a "stranger to [Seyfarth]'s attorney-client relationship." (*Id.*) He argues that as a result of these various communications and Seyfarth's own actions, Seyfarth is a crucial witness. Further, Pu alleges Seyfarth was "instrumental in gaining access to Pu's apartment through use of extortionate threats" (*id.* at 5-6) and was aware of the wrongdoing of Trafalgar House and Greenthal, and orchestrated a coverup, including directing individuals not to communicate with Pu. (*Id.*)

Barry Mandel, a partner in Seyfarth's Real Estate Transaction Department, provided legal advice to the Trafalgar House Board on various matters related to Trafalgar House. (Defs.' Opp'n at 5-6; Mandel Decl. ¶ 2; Adkins Decl. ¶¶ 3-4.) Defendants assert that as a result of numerous communications from Pu to a member of the Board of Mangers of Trafalgar House and an employee of Greenthal, it was determined that Pu's complaints were likely to result in litigation and all communications should be routed through Mandel, as counsel for Trafalgar House. (Defs.' Opp'n at 6; Mandel Decl. ¶ 5.)

---

[2] Seyfarth has acted as counsel for Greenthal since 2006. Prior to that, Richard Resnik, Esq. and Barry Mandel, Esq., who joined Seyfarth in 2006, had represented Greenthal for nearly thirty years. (McCarthy Decl. ¶ 2; Mandel Decl. ¶ 2.)

Pu argues that Seyfarth's past conduct serves to disqualify the firm from representing any party other than itself in the instant action. Specifically, he posits three general bases for disqualification: 1) Seyfarth's own interests conflict with those of the other Defendants; 2) the interests of some Defendants represented by Seyfarth conflict; and 3) Seyfarth should be called as a witness on significant issues of fact. (Pls.' Mem. at 2-3.) In sum, Pu argues that Seyfarth is disqualified under the "lawyer as witness" rule, Disciplinary Rule 5-102 ("DR 5-102"), and for conflicts of interest in the representation of defendants other than itself, pursuant to Disciplinary Rule 5-101 ("DR 5-101"). In the collective response of Defendants presently represented by Seyfarth, they argue that this motion to disqualify is merely the "latest tactic in an on-going and nearly three year effort by [Pu] . . . to wreck havoc with the entire Trafalgar House Condominium Association, their managing agent (Greenthal) and their previous and current attorneys arising out of a $380,000 condominium assessment on all the unit owners of Trafalgar House for the repair of the condominium's common hallways and lobby." (Defs.' Opp'n at 2.) Defendants assert that Pu's argument for disqualification is meritless.

### III. DISCUSSION

**A. Legal Standard For Disqualifying Counsel**

Federal courts derive their authority to disqualify attorneys from their responsibility to maintain the integrity of the judicial process. *See Occidental Hotels Management B.V. v. Westbrook Allegro L.L.C.*, 440 F. Supp. 2d 303, 308 (S.D.N.Y. 2006) (quoting *Hempstead Video, Inc. v. Incorporated Village of Valley Stream*, 409 F.3d 127, 132 (2d Cir. 2005) (quoting *Board of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979))); *see also Shabbir v. Pakistan International Airlines*, 443 F. Supp. 2d 299, 303-04 (E.D.N.Y. 2005) (noting that district courts have the responsibility "to

uphold the applicable ethical precepts of the district in which it sits."). The Second Circuit recognizes that, while disqualification motions frequently refer to state disciplinary rules for direction, "'such rules merely provide general guidance and not every violation of a disciplinary rule will necessarily lead to disqualification.'" *See Occidental Hotels*, 440 F. Supp. 2d at 309 (quoting *Hempstead Video*, 409 F.3d at 132). This Circuit has concluded that, "unless an attorney's conduct [would] taint the underlying trial . . . , courts should be quite hesitant to disqualify an attorney." *Nyquist*, 590 F.2d at 1246; *see also Occidental Hotels*, 440 F. Supp. 2d at 309; *Ritchie v. Gano*, No. 07 Civ. 7269 (VM) (JCF), 2008 WL 4178152, at *3 (S.D.N.Y. Sept. 8, 2008); *Paretti v. Cavalier Label Company, Inc.*, 722 F. Supp. 985, 988 (S.D.N.Y. 1989) ("[V]iolations of the Model Code, as literally read, should not result in removal of counsel unless the conduct 'does . . . violence to . . . the fundamental values which the [C]anons were written to protect . . . .'" (quoting *Ceramco, Inc. v. Lee Pharmaceuticals*, 510 F.2d 268, 271 (2d Cir. 1975))); *see also Renner v. Townsend Fin. Servs. Corp.*, No. 98 Civ. 926 (CSH), 2002 WL 1013234, at *6 (S.D.N.Y. May 20, 2002) (noting that the Second Circuit has indicated that the New York disciplinary rules need not be rigidly applied).

The Court's practical task is to determine whether any alleged or actual conflict of interest would undermine its confidence in the attorney's representation of his client. *See Occidental Hotels*, 440 F. Supp. 2d at 309. Because disqualification is a severe sanction and results in limiting a litigant's right to retain the counsel of their choice, motions for disqualification require a high standard of proof by the moving party, *id.*, and "[m]ere speculation will not suffice." *Paretti*, 722 F. Supp. at 987 (internal citations and references omitted); *see also Int'l Union, United Automobile Aerospace & Agricultural Implement Workers of America (UAW) v. Nat'l Caucus of Labor Comms.*, 466 F. Supp. 564, 570 (S.D.N.Y. 1979). In reviewing motions to dismiss, the Court must consider

this balance of interests: "the client's right to freely choose his counsel against the need to maintain the standards of the legal profession." *See Occidental Hotels*, 440 F. Supp. 2d at 309; *see also Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir. 1983). However, any doubts should be resolved in favor of disqualification. *See Shabbir*, 443 F. Supp. 2d at 305 (referencing *Cheng v. GAF Corp.*, 631 F.2d 1052, 1059 (2d Cir. 1980)).

Further, motions to disqualify *opposing* counsel "are viewed with disfavor in this Circuit because they are often interposed for tactical reasons and result in unnecessary delay." *Bennett Silvershein Assocs. v. Furman*, 776 F. Supp. 800, 802 (S.D.N.Y. 1991) (citation omitted); *see also Shabbir*, 443 F. Supp. 2d at 304; *Ritchie*, 2008 WL 4178152; *Cole Mechanical Corp. v. Nat'l Grange Mutual Insurance*, No. 06 Civ. 2875 (LAK) (HBP), 2007 WL 2593000, at *4 (S.D.N.Y. Sept. 7, 2007).

Finally, courts have routinely held that a disqualification motion based on an alleged conflict of interest will be denied where the moving party will suffer no harm or prejudice. *See Green v. Fischbein, Oliveri, Rozenholc & Badillo*, 522 N.Y.S.2d 529, 533 (N.Y. App. Div. 1987).

The Court believes it is prudent to note that New York has recently adopted the Model Rules of Professional Conduct, which will take effect on April 1, 2009. The Parties should reference the relevant rules and ensure their conduct is in compliance with the requirements of the Model Rules.[3] Because the Parties argue this motion under the New York Rules, the Court employs them for its review.

---

[3] *See* New York State Bar Ass'n, Professional Standard for Attorneys, http://www.nysba.org/AM/Template.cfm?Section=For_Attorneys&TEMPLATE=/CM/ContentDisplay.cfm&CONTENTID=23327 (last visited Mar. 10, 2009).

**B. The "Lawyer As Witness" Rule**

The current New York Lawyer's Code of Professional Responsibility addresses circumstances meriting attorney disqualification where counsel may be required to serve as a trial witness. *See* DR 5-102, codified as N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.21 (1999). In pertinent part, DR 5-102 places limitations on continued representation of a client in a matter where "it is obvious that the lawyer ought to be called as a witness on a significant issue" on behalf of the client, DR 5-102(c), or other than on behalf of the client, DR 5-102(d). In the latter scenario, "the lawyer may continue the representation until it is apparent that the testimony is or may be prejudicial to the client at which point the lawyer and the firm must withdraw from acting as an advocate before the tribunal." DR 5-102(d). Provisions 5-102(a) and (b) contemplate the same restrictions in the context of accepting representation in the first instance where it is known or obvious the lawyer or law firm will be called to testify on a significant issue.

As a threshold matter, courts are particularly reluctant to disqualify an attorney on the basis of the "lawyer as witness" rule, and subject such a motion to "fairly strict scrutiny." *Occidental Hotels*, 440 F. Supp. 2d at 315; *see also Shabbir*, 443 F. Supp. 2d at 307-08 (providing a comprehensive review of the "lawyer as witness" rule and recognizing that a disqualification motion so premised is "subject to 'strict scrutiny because of the 'strong potential for abuse.'"" *Id.* at 308 (quoting *Stratavest Ltd. v. Rogers*, 903 F. Supp. 663, 667 (S.D.N.Y. 1995) (quoting *Russo v. Friedman*, No. 90 Civ. 6913 (LBS), 1992 WL 196791, at *9 (S.D.N.Y. July 31, 1992)))). As part of the inquiry, the Court must determine the necessity of the attorney as a witness. *Talvy v. American Red Cross in Greater New York*, 618 N.Y.S.2d 25, 30-31 (N.Y. App. Div. 1994); *Paretti*, 722 F. Supp. at 986; *see also Pearl v. 305 East 92nd Street Corp.*, 548 N.Y.S.2d 25 (N.Y. App. Div. 1989).

Determining whether an attorney's testimony is necessary "must take into account such factors as the significance of the matters, weight of the testimony, and availability of other evidence." *Talvy*, 618 N.Y.S.2d at 30-31; *Paretti*, 722 F. Supp. at 986 (quoting *S & S Hotel Ventures Ltd. Partnership v. 777 S.H. Corp.*, 69 N.Y.2d 437, 446 (1987)). Where it is unclear whether an attorney's testimony will be necessary, a motion to disqualify should be dismissed, unless there is a showing of clear prejudice to the moving party. *Shabbir*, 443 F. Supp. 2d at 308 (referencing *Stratavest Ltd.*, 903 F. Supp. at 668). The more speculative the potential prejudice, the less likely a court will be to grant a motion to disqualify. *Id.* Further, where a lawyer would provide only cumulative testimony, he may act as trial counsel. *See Paretti*, 722 F. Supp. at 986 (referencing *Munk v. Goldome Nat'l Corp.*, 697 F. Supp. 784, 787, n.3 (S.D.N.Y. 1988)). Once it is clear that counsel will be called as a witness on an issue, the party moving to disqualify said counsel carries the burden of demonstrating how, and as to what issues in the case, the prejudice may occur and that the likelihood of prejudice occurring is substantial. *See Occidental Hotels*, 440 F. Supp. 2d at 315. Finally, "'[t]he Southern District has held that vicarious disqualification of an entire firm is not necessary when an individual attorney is disqualified under DR 5-102[a]'" or (b). *Id.* (quoting *April Broadcasting, Inc. v. Smith*, No. 95 Civ. 7664 (LMM), 1996 WL 137487, at *5 (S.D.N.Y. Mar. 27, 1996)).

Pu argues that Seyfarth must be disqualified under the "lawyer as witness" rule because it is a witness to the violation of Trafalgar House's bylaws, participated in crucial communications, and was present at a board meeting where Pu alleges his complaints about the assessment were discussed. (Pls.' Mem. at 18.) He maintains that any attorney-client privilege that would attach from these communications and meetings would be subject to waiver and disclosure if there was a

9

showing of good cause under the rules governing derivative actions. (*Id.*, n.1.) Specifically, he argues that any alleged attorney-client privilege Seyfarth may assert is waived as to its participation in Trafalgar Board Meetings, in particular one on October 23, 2008, at which McCarthy was present because McCarthy was not included in Seyfarth's attorney-client relationship with Trafalgar House. (*Id.* at 5.)

Pu also claims that Seyfarth is a witness to its own improper conduct, including its actions in covering up Trafalgar House's alleged violations. (*Id.* at 6 & 19.) Pu avers that Seyfarth is a crucial witness and played an instrumental role in a number of the allegations in his Complaint, including Seyfarth gaining access to Pu's apartment on behalf of Trafalgar House and Greenthal through threatening to file a disciplinary complaint against Pu, for which Trafalgar House and Greenthal then billed Pu for Seyfarth's fees.[4] (Pls.' Mem. at 6.) Additionally, Pu asserts that Seyfarth is a witness to bylaw violations. (Pls.' Mem. at 17.) He argues that Seyfarth communicated with McCarthy about Pu's allegations and participated in a crucial board meeting at which McCarthy was present and during which Pu's allegations were discussed. (Pls.' Mem. at 17-18.) Pu asserts that those communications will be crucial to establishing certain facts relevant to his claims. (Pls.' Mem. at 18.) He reasons that Seyfarth will be a witness against the Defendants, or alternatively a witness on their behalf, and that either would subject Seyfarth to disqualification under DR 5-102.

Seyfarth claims that Pu's assertion that Seyfarth should be disqualified under the "lawyer as witness" rule "is factually and legally meritless." (Defs.' Opp'n at 7.) Seyfarth asserts that even if

---

[4]Pu disputes Seyfarth's argument that any testimony it could provide would be cumulative. He argues that some of the conversations at issue were among Seyfarth lawyers, thus only a Seyfarth attorney would be able to testify as to their content. Pu asserts that these communications are relevant to this litigation because he was billed by Seyfarth for their time in relation to a dispute between Pu and Trafalgar House over access to Pu's unit. Pu further asserts that because he was billed by Seyfarth, any privilege to these conversations would arguably be waived. (Pls.' Reply at 10 (referencing 8/20/08 Trafalgar House Bill, Compl., App. at 1).)

Pu's allegations about Seyfarth's participation are taken as true there was no waiver of the attorney-client privilege at the Board meeting and any conversations therein are strictly privileged.[5] (Defs.' Opp'n at 14.) Seyfarth argues that the minimal claims of misconduct against it may not comprise a legally cognizable wrong, but even if they were found actionable, Pu has not met his burden of demonstrating why Seyfarth must testify as to those issues or how such testimony would substantially prejudice its clients or Pu. Further, Defendants argue that even if some attorneys from Seyfarth were required to testify and that such testimony would be prejudicial, there is no basis to disqualify the whole firm. (Defs.' Opp'n at 16.) Barry Mandel, the Seyfarth attorney who represented the Trafalgar House Board of Managers following the imposition of the special assessment, is a real estate transactional attorney, and not a litigator, and would not be counsel to Defendants at trial. (Defs.' Opp'n at 17; Mandel Decl. ¶ 7.)

The Court finds that Pu has failed to prove that testimony from Seyfarth is obvious or necessary. His arguments are speculative at best and he has failed to show the necessity of any Seyfarth attorney as a witness, even were the allegations against them to prevail to the point of trial. Further, Pu has not demonstrated that testimony from Seyfarth would be nonduplicative, unprivileged, or prejudicial to the other Defendants or Pu. His motion to disqualify under the "lawyer as witness" rule is **DENIED.**

---

[5]Pu attempts to rely on certain legal precedent favoring waiver of attorney-client privilege in certain circumstances in the context of derivative actions. (Pls.' Mem. at 18.) Defendants dispute his characterization of this action as derivative and further dispute that there has been a showing of good cause that would result in waiving the privilege. (Defs.' Opp'n at 15, n.12.) The Court does not reach that issue here as it finds no basis for disqualification under the "lawyer as witness" rule at this stage in the litigation.

**C. Conflict of Interest**

Disciplinary Rule 5-101, presently codified as N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.20, addresses situations where an attorney should not accept or continue representation of a client because their professional judgment "will be or reasonably may be affected by the lawyer's own financial, business, property, or personal interests." DR 5-101(a). If, however, a "disinterested lawyer would believe that the representation of the client will not be adversely affected thereby and the client consents to the representation after full disclosure of the implications of the lawyer's interest[,]" the representation may proceed. *Id.* Further, while not explicitly raised in Pu's motion for disqualification, "[w]here the lawyer's potential disqualification arises out of the simultaneous representation of two clients, the task before the court is to determine if Canon 5, which provides that a lawyer 'should exercise independent judgment on behalf of a client,' has been breached." *Shabbir*, 443 F. Supp. 2d at 310 (quoting MODEL CODE OF PROF'L RESPONSIBILITY Canon 5 (1970)); *see also* N.Y. CODE OF PROF'L RESPONSIBILITY D.R. 5-105, N.Y. COMP. CODES R. & REGS. tit. 22, § 1200.24. "In cases of concurrent representation, [the Second Circuit has] ruled it is 'prima facie improper' for an attorney to simultaneously represent a client and another party with interests directly adverse to that client." *Hempstead Video*, 409 F.3d at 133 (referencing *Cinema 5, Ltd. v. Cinerama, Inc.*, 528 F.2d 1384, 1387 (2d Cir. 1976)).

**1. Alleged Likelihood of Cross-Claims of Trafalgar House, Greenthal, and Seyfarth**

Pu argues that Seyfarth should be disqualified from representing all Defendants except itself because of the likelihood that Trafalgar House and Greenthal will raise cross-claims against each other. (Pls.' Mem. at 4.) He also argues that Seyfarth's own liability and complicity in collecting the

final installment and covering up the alleged fraud[6] (Pls.' Mem. at 9, 11-12) puts its interests in dissonance with Trafalgar House and the other Defendants. For instance, Pu alleges that Trafalgar House may have claims against Seyfarth, including breach of fiduciary duty for its role in advising Trafalgar House to collect the final installment, claims against Adkins, and/or claims against Greenthal. (*Id.* at 14-15.) Pu argues that Seyfarth's representation of the Defendants conflicts with each Defendants' own interest in zealously defending themselves in the instant action. (*Id.* at 13-14.)

Seyfarth responds by asserting that there are no claims the Defendants represented by Seyfarth have as against each other or against Seyfarth. In support of this assertion it provides the affidavits of Mark Adkins, Esq., Michaele McCarthy, and Barry Mandel, Esq. (*See* Adkins Decl.; Declaration of Michaele McCarthy ("McCarthy Decl."), Jan. 8, 2009; and Mandel Decl.) Seyfarth argues that "these hypothetical cross-claims are unidentified and too speculative to warrant disqualification." (Defs.' Opp'n at 7.) Additionally, "[a]s a threshold matter, Defendants Trafalgar House and Greenthal have each specifically rejected the notion that any potential claims or cross-claims exist by and between each other and Seyfarth." (Defs.' Opp'n at 10; Adkins Decl. ¶ 5; McCarthy Decl. ¶ 5.) Defendants argue that these statements effectively resolve the question of conflict as a matter of law. *See Pearl*, 548 N.Y.S.2d at 25-26 (in motion to disqualify attorney, a co-defendant and counsel for another named defendant, the court concluded that "plaintiff's alleged solicitude for potential conflict between his adversaries is totally rejected by the defendant-clients themselves, which should have concluded the court's inquiry on this score."). Furthermore, without admitting any wrongdoing, Seyfarth notes that the Defendants it represents have "consented" to

---

[6]Pu argues that attorneys may be liable to third parties for fraudulent, collusive, malicious, or tortious acts. (Pls.' Mem. at 10.)

13

Seyfarth's representation in this action. (Adkins Decl. ¶¶ 1 & 5; McCarthy Decl. ¶¶ 1 & 5; Defs.' Opp'n at 9, n.8.)

Seyfarth also argues that Pu fails to articulate what interest Seyfarth maintains that could give rise to a conflict, other than the continued representation of its clients in defense of this lawsuit, which has already been resolved. Defendants argue that "[a]ny fair reading of the complaint regarding the few allegations asserted against Seyfarth leads to the inescapable conclusion that Seyfarth did nothing more than act as counsel to its clients for a limited time period and perform legal services within the parameters of an attorney-client relationship in the regular course of such representation."[7] (Defs.' Opp'n at 3.) Finally, Seyfarth asserts that Pu fails to identify any prejudice to him that would result from the alleged conflict of interest.

Pu disputes Seyfarth's minimization of its involvement, again arguing that Seyfarth played a significant role and may be held liable to Pu, a non-client "as a consequence of the attorney's wrongful or improper exercise of authority, or where the attorney has committed fraud or collusion or a malicious or tortious act." (Pls.' Reply (quoting *Green v. Fischbein Oliveri Rozenholc & Badillo*, 507 N.Y.S.2d 148, 152 (N.Y. App. Div. 1986) (quoting *Singer v. Whitman & Ransom*, 442 N.Y.S.2d 26 (N.Y. App. Div. 1981)).) He further argues that Seyfarth's procuring affidavits from Trafalgar House and Greenthal stating that those entities will not bring cross-claims against each

---

[7]Seyfarth maintains that Pu's Complaint contains only minimal allegations against it. These include Pu's allegation that Seyfarth received "RICO income" as a result of payment from Trafalgar House for legal services rendered in connection with the claims asserted by Pu relating to the special assessment (Compl. ¶ 69) and that certain circumstances arising out of Pu's refusal to provide Trafalgar House with access to his unit to repair an ongoing leak resulted in "extortionist threats" (Compl. ¶ 54). Seyfarth argues that the issues, facts, and circumstances Pu raises regarding access to his unit are unrelated to the special assessment at issue in this litigation. (Mandel Decl. ¶ 6.) Pu replies that Defendants have omitted important allegations, such as the evidence that Seyfarth conspired with the others and advised Trafalgar House to collect the final installment of the special assessment, despite Seyfarth being aware of Pu's complaint that mortgagee consent had not been obtained, a violation of the Trafalgar House bylaws. (Pls.' Reply Brief in Further Supp. of the Mot. to Disqualify ("Pls.' Reply"), Jan. 16, 2009 at 2.)

other or Seyfarth demonstrates Pu's point that disqualification is appropriate and necessary. (Pls.' Reply at 5.)

Pu's reference to *Green* does little to advance his assertions, as the court there concluded that "[u]nder New York Law an attorney generally cannot be held liable to third parties for actions taken in furtherance of his role as counsel unless it is shown that he 'did something either tortious in character or beyond the scope of his honorable employment.'" *Green*, 507 N.Y.S.2d at 153 (internal citation omitted). Further, an allegation of conspiracy, as articulated in Pu's Complaint and the instant motion to disqualify, should not alone serve to fashion a cause of action against a law firm representing a Defendant during the time of the activities underlying the claims in the lawsuit. *See Pearl*, 548 N.Y.S.2d at 26. As Seyfarth's liability is not a foregone conclusion at this juncture, this Court is reluctant to conclude liability should provide a basis for disqualification. Determinations about the merits of the allegations should be saved for discovery, dispositive motions, and trial. Based on the arguments presented, Pu's motion to disqualify Seyfarth pursuant to DR 5-101 should be **DENIED.**

**2. Pu Alleges Seyfarth Appears on Both Sides of Pu's Derivative Action**

Pu also argues that by representing Defendants other than Trafalgar House, Seyfarth appears on both sides of Pu's claims, as Pu brings this action, in part, as a derivative action on behalf of Trafalgar House against the other Defendants. (Pls.' Mem. at 16.) Based on this assertion, Pu concludes that Seyfarth, as Trafalgar House's lawyer, has at least some obligation to assist in the advancement of derivative claims being asserted on Trafalgar House's behalf. (*Id.*) Seyfarth argues that Pu's derivative claim is an "illogical fiction" as Pu is suing Trafalgar House to recover money on his own behalf and other unit owners. Seyfarth also disagrees with Pu's position that the mere

designation of this action as "derivative" creates any additional rights to disqualify Seyfarth (Defs.' Opp'n at 4) and argues that "a unit owner . . . lacks standing, as a matter of law, to bring an individual claim relative to his own personal interest in the common funds of Trafalgar House, such as his portion of the approved special assessment at issue." (Defs.' Opp'n at 12.) Seyfarth concludes that it is Pu who has created a conflict of interest here. (*Id.* at 13.) Pu replies that this is clearly a derivative action as Pu seeks to recover for losses sustained by Trafalgar House. (Pls.' Reply at 10.) He argues that cases cited by Seyfarth are distinguishable because he is bringing a derivative action, and as such is likely to suffer prejudice in his representative capacity because of that conflict. (*Id.* at 5-6.) Pu argues that he will not be able to gain access to information Trafalgar House and Greenthal may have about Seyfarth because of the representation. (*Id.*) Finally, Pu argues that Seyfarth is unlawfully extracting payment from Trafalgar House and that payment prejudices Trafalgar House, on whose behalf Pu sues. (*Id.* at 8.)

Employing Pu's logic, not only should Seyfarth be disqualified, Pu should not represent himself individually and represent Trafalgar House for purposes of a derivative action in the same litigation. The Court refuses to be mired in this motion to disqualify based almost exclusively on prediction and speculation. Additionally, Pu's attempts to present any harm or prejudice he will suffer as a result of Seyfarth's continued representation of most of the Defendants are unavailing. Absent any facts, evidence, or argument substantiating prejudice, the Court questions whether this motion is anything more than a litigation strategy. Further, while it is less common to have a case where the counsel subject to a motion to disqualify is also a named defendant and counsel for other named defendants, the mere presence of this circumstance without more should not sway in favor of disqualification. Otherwise, adversaries might strategically name opponent's counsel as a party to an

action as a prelude to a motion to disqualify. In the instant case, where there is not yet any responsive pleadings from Defendants, no discovery has taken place, and the allegations presented in the instant motion are speculative and present circular logic, the Court concludes disqualification is premature at best. The motion to disqualify raises many questions for the Court, including whether Pu has standing to bring a derivative action on behalf of Trafalgar House. While there may be circumstances meriting disqualification if Seyfarth is indeed privy to conflicting interests through its representation of multiple Defendants, the information and declarations presented at present provide the Court with confidence that Seyfarth's representation of Trafalgar House, Greenthal, Adkins, McCarthy, and itself does not presently taint the instant litigation, raise concern about the adequacy of representation, or prejudice any party to the suit.

## IV. CONCLUSION

For the foregoing reasons, Pu's motion to disqualify Seyfarth Shaw LLP is **DENIED**.

**IT IS FURTHER ORDERED** that the Defendants may filed Motions to Dismiss on or before **March 31, 2009**; Pu may respond on or before **April 14, 2009**; and Defendants may reply on or before **April 21, 2009.** This motion has been referred to the undersigned. Therefore, in compliance with local and individual practice rules, the Parties are instructed to provide courtesy copies of their briefing papers to the Chambers of the Honorable Ronald L. Ellis, Room 1970.

**SO ORDERED this 10th day of March 2009**
**New York, New York**

The Honorable Ronald L. Ellis
United States Magistrate Judge

17