UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------

RICHARD PU,

                      Plaintiff,

      -against-                             08 Civ. 10084 (RJH)(RLE)

                                                       **MEMORANDUM OPINION**
                                                            **AND ORDER**

CHARLES H. GREENTHAL MANAGEMENT
CORP, et al.,

                      Defendants.

-------------------------------------------------

Richard J. Holwell, District Judge:

       Richard Pu, an attorney, owns a condominium in a building on East 90th Street in Manhattan.  He brings this action *pro se* against the building's condominium association (the "Association"), its outside counsel, and other related defendants, alleging that they fraudulently imposed a $380,000 assessment on condominium owners, amounting to about $4,200 per owner, to finance hallway renovations.  Pu does not contend that defendants embezzled or misapplied the assessment proceeds, nor does he contest that the renovations enhanced the value of the property to a degree proportionate to their cost. Rather, Pu contends the assessment was fraudulent because defendants did not obtain prior written approval from the condominium owners' mortgagees, as he believes the Association's by-laws require, but instead merely notified the mortgagees of the assessment and permitted them an opportunity to object.  On this predicate, he asserts federal claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO")

and the Fair Debt Collection Practices Act ("FDCPA"), along with a slew of state law claims sounding in tort and contract.

Now before the Court are defendants' motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Magistrate Judge Ronald Ellis issued a report and recommendation (the "Report"), familiarity with which is presumed, recommending that the motions be granted. Judge Ellis found that the notice-and-objection procedure defendants employed to obtain mortgagee consent satisfied, as a matter of law, the Association's by-laws. Report at 10 ("Defendants obtained the requisite consent and therefore did not violate the by-law."). Because Pu's federal claims are premised on alleged violations of the by-laws, Judge Ellis recommended that the Court dismiss those claims. Pu filed timely objections. Upon review, the Court agrees with Judge Ellis's well-reasoned analysis. In addition, the Court finds that the federal claims warrant dismissal for the independent reason that the Complaint fails to plead the elements of a RICO or FDCPA claim. Finally, the Court deems it proper to exercise supplemental jurisdiction to dismiss Pu's state law claims on their merits. Accordingly, the entire complaint is dismissed with prejudice.

## STANDARD OF REVIEW

A district court may designate a magistrate to hear certain motions and to submit a report and recommendation as to how the Court should resolve the motions. *See* 28 U.S.C. § 636(b)(1) (2009). Within fourteen days of service of the recommendation, any party may file written objections. *Id.* In evaluating the magistrate's report, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.*

The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.*; *see, e.g., Eisenberg v. New England Motor Freight, Inc.*, 564 F. Supp. 2d 224, 226-27 (S.D.N.Y. 2008). "If, however, the party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." *Silva v. Peninsula Hotel*, 509 F. Supp. 2d 364, 366 (S.D.N.Y. 2007) (citations omitted). Where a party makes "merely perfunctory responses, argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original petition," the court reviews for clear error. *Edwards v. Fischer*, 414 F. Supp. 2d 342, 346-47 (S.D.N.Y. 2006) (internal quotation marks and citations omitted). Parties may not "attempt to relitigate the entire content of the hearing … [and] are not to be afforded a 'second bite at the apple . . . .'" *Carmardo v. General Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 382 (W.D.N.Y. 1992).

## DISCUSSION

By-law V(11), the provision in question, reads as follows:

> Wherever . . . the Common Elements [of the building] shall require additions, alterations or improvements costing in excess of $100,000 . . . in any fiscal year, then such additions, alterations or improvements shall not be made unless first approved [by] in excess of two-thirds (2/3) in Common interest of all the Unit Owners and their mortgagees. [*sic*]

(Pu App'x at 133). Pu does not dispute that defendants obtained proper approval for the hallway renovations from 76% of the unit holders. Report at 3. Rather, he alleges violations of only the final phrase in the by-law: "and their mortgagees." Judge Ellis found defendants complied with that language by notifying mortgagees of the renovation

3

plan and allowing them 30 days to object.[1]  Report at 3, 10.  Pu objects to that finding on the ground that, under contract principles, silence does not constitute assent.  Pl. Obj. at 7-8 ("If that were the law, each of us would receive thousands of letters every day, and be required to respond to each, lest our silence be deemed consent.").  He cites authority for the proposition that parties will not be deemed to assume obligations through silence alone.  *Id.* at 7-11.

Pu's objections misstate the issue in this case, which is one of contract interpretation, not contract formation.  Whether a notice-and-objection procedure satisfies specific contract language is a very different question than whether silence may bind one to an obligation or waive a right arising from an independent source.  Condominium by-laws constitute, at least for interpretive purposes, a contract between unit owners and the condominium association.  *See Perlbinder v. Board of Managers of 411 E. 53rd St. Condominium*, 886 N.Y.S.2d 378, 380-81 (N.Y. App. Div. 2009); *Gennis v. Pomona Park Bd. of Managers*, 828 N.Y.S.2d 472, 473 (N.Y. App. Div. 2007).  Courts may construe contracts as a matter of law if their language is unambiguous.  *Curry Road Ltd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990).  While the relevant provision of the by-laws does not specify the required form of mortgagee consent, other provisions expressly require the affirmative, written approval of mortgagees.  (White Aff. Ex. A at 25.)  The mortgagee consent language in by-law V(11), when read in conjunction with (and in contrast to) the express language in the other provisions, establishes unambiguously that alterations and improvements do not require such affirmative, written approval.  *See Perlbinder*, 886 N.Y.S.2d at 381 ("In construing a contract, an

---

[1] Defendants also informed unit holders that they would use this notice procedure for mortgagees.  (Pu App'x at 47.)

interpretation that gives effect to all the terms of an agreement is preferable to one that ignores terms or accords them an unreasonable interpretation.") (condominium by-laws context) (citation omitted).

Pu's federal claims, however, suffer a much more egregious flaw than unsound interpretation of contract language. He has shoehorned a dispute over the meaning of condominium by-laws into federal claims based on RICO and FDCPA, statutes aimed at "long-term criminal activity" and "abusive debt collection practices," respectively. *H.J. Inc. v. Nw. Bell Tel. Co.*, 429 U.S. 229, 239 (1989) (RICO); 15 U.S .C. § 1692(e) (FDCPA). This litigation strategy—presumably geared to exploit the damage multiples for which the federal statutes provide—is baldly improper, but Pu is not the first to employ it. One court in this district has surmised "that every member of the federal bench has before him or her at least one-and possibly more-garden variety fraud or breach of contract cases that some Plaintiff has attempted to transform into a vehicle for treble damages by resort to what another respected jurist, Judge Allan Schwartz . . . has referred to as 'the litigation equivalent of a thermonuclear device'-a civil RICO suit." *Goldfine v. Sichenzia*, 118 F. Supp. 2d 392, 394 (S.D.N.Y. 2000) (*quoting Schmidt v. Fleet Bank*, 16 F.Supp.2d 340, 346 (S.D.N.Y.1998)). In the same vein, two other courts in this district have issued notably sharp dismissals of RICO claims premised on real estate disputes similar to Pu's dispute with the condo Association. *See Calka v. Kucker Kraus & Bruh, LLP*, No. 99 Civ. 4999, 2000 WL 557266, at *1 (S.D.N.Y. May 8, 2000) (Mukasey, J.) (calling suit "frivolous and obstructive" where plaintiff brought RICO claims for what was "essentially a landlord/tenant dispute"); *West 79th Street Corp. v. Congregation Kahl Minchas Chinuch*, No. 03 Civ. 8606, 2004 WL 2187069 (S.D.N.Y.

Sept. 29, 2004) (Sweet, J.) ("It has been suggested that the civil provisions of [RICO] are the most misused statutes in the federal corpus of law . . . . To this end, courts must be wary of putative civil RICO claims that are nothing more than sheep masquerading in wolves' clothing.") (citation omitted).

Pu's complaint does not adequately plead a RICO claim.  To state a cause of action under RICO, a plaintiff must plead the seven constituent elements of a substantive RICO violation: "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise' (7) the activities of which affect interstate or foreign commerce." *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir. 1983) (*quoting* 18 U.S.C. § 1962(a)-(c) (1976)).  Further, a plaintiff must allege that the substantive RICO violation caused him injury.  *Id*. ("To satisfy this latter burden, plaintiff must allege that he was 'injured in his business or property by reason of a violation of section 1962.'") (*quoting* 18 U.S.C. § 1964(c) (1976)).

The Complaint clearly fails to satisfy these pleading burdens.  Most obviously, in making allegations about what is essentially a disagreement over the meaning of contract language, Pu does not plausibly allege that defendants engaged in any predicate racketeering activity.  The Complaint includes a laundry list of purported racketeering acts—"extortion, witness tampering, wire fraud, mail fraud, bank fraud, obstruction with local law enforcement, [and] money laundering"—but all of these varied offenses emanate from Pu's thesis that defendants defrauded the unit owners and mortgagees by collecting the $380,000 assessment without affirmative mortgagee consent, applying the proceeds to the hallway renovations, and subsequently seeking to conceal the supposed

6

wrongdoing. (Compl. ¶ 67 - 68.)[2] In other words, all of the alleged racketing activity is premised on the assumption that defendants fraudulently obtained the assessment monies by knowingly violating the mortgagee consent requirement and concealing that violation. But even if Pu had pleaded that defendants' notice methods violated the by-laws (which he has not), he has not plausibly alleged that defendants acted with scienter, as predicate RICO violations grounded in fraud require. *W. 79th Street*, 2004 WL 2187069 at *6-7. A RICO plaintiff may prove fraudulent intent by "identifying circumstances indicating conscious behavior by the defendant" or "alleg[ing] a motive for committing fraud and a clear opportunity for doing so." *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995). Pu has done neither. Though a section of the Complaint titled "Facts Going to Scienter" alleges that the mortgagee consent requirement was "well known" to defendants, all of the averments are consistent with a good faith belief that notifying the mortgagees of the assessment and offering them an opportunity to object satisfied the consent requirement. (Compl. ¶¶ 16 -19.) Indeed, the very fact that defendants provided notice to all mortgagees, *and* informed unit holders of the notice-and-objection process, belies the existence of any pernicious scheme to fraudulently subvert the by-laws' approval requirements. *See W. 79th Street Corp.*, 2004 WL 2187069 at *7 ("Acts done inadvertently, mistakenly, or in good faith without an intent to defraud are insufficient to satisfy the knowledge and criminal intent elements . . ."). Pu's allegations about defendants' motives require even less discussion; they fall well short of supporting an

---

[2] The only allegation of predicate activity independent of the $380,000 assessment is Pu's assertion that one of the defendants extortionately threatened to file a disciplinary report when Pu denied the Association access to his apartment to conduct necessary repairs. (Compl. ¶ 51-56.) This allegation fails to plead the elements of extortion, which under New York law require that the accused obtain "property" by threating, *inter alia*, physical injury, property damage, or exposure of a secret that would subject one to "hatred, contempt, or ridicule." N.Y. Penal Law § 155.05(e) (McKinney 2005). Furthermore, Pu's "extortionate threat" allegation, standing alone, is not enough to satisfy the RICO statute, which requires a pattern of at least two predicate offenses. *Moss*, 719 F.2d at 17.

inference that defendants intentionally lied to unit holders, mortgagees, or anyone else to obtain the assessment monies. (Compl. ¶ 43 (*e.g.*, "Defendant McCarthy . . . needed [] money to purchase a farm, where she would pursue a career as a bee keeper. On information and belief, [she] wished to see the renovations performed so that she could receive kickbacks from the contractors"; "Defendant Seyfarth Shaw sought to earn fees from representing Trafalgar in the instant action [about the same fraud Seyfath purportedly assisted] . . . .")). Because the Complaint does not adequately allege consciously fraudulent behavior or a motive and opportunity to commit fraud, it fails to allege predicate racketeering activity. *Powers v. British Vita*, *P.L.C.*, 57 F.3d at 184; *W. 79th Street Corp.*, 2004 WL 2187069, at *8.

Pu similarly fails to plead that defendants engaged in a "pattern" of racketeering activity. For racketeering activity to constitute a "pattern," it must "amount to or pose a threat of continuing criminal activity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 429 U.S. 229, 239 (1989). Such "continuity" may be either closed- or open-ended. *Id*. at 241. Plaintiff's allegations about defendants' scheme to subvert the mortgagee consent requirement do not plead closed-ended continuity because the allegations do not span a "substantial period of time" (here, drawing all inferences in Pu's favor, approximately eighteen months beginning in June 2007 and ending in January 2009).[3] Moreover, the allegations do not implicate any of the other factors the Second Circuit considers in connection with the closed-ended continuity inquiry, such as the presence of "separate schemes." *First*

---

[3] Pu argues that it is "plausible to believe" that predicate acts of mail and wire fraud were committed earlier, in 2006, because defendants likely used "the mails or [] interstate wires" during that year. (Pl. Opp. to SSL at 15.) But there are no allegations to show that defendants so much as contemplated the prospect of gaining mortgagee consent for the renovations before June 2007. (Pu App'x at 47.) Pu's assertion that the alleged predicate activity should be deemed to have begun in 2006 is therefore unfounded. *See W. 79th Street Corp.*, 2004 WL 2187069 at *6 ("[T]he mail or wire communications at issue . . . must be incident to an essential part of the scheme, which itself has a fraudulent and deceptive purpose.") (citations omitted).

8

*Capital Asset Management, Inc. v. Satinwood, Inc.*, 385 F.3d 159, 181 (2d Cir. 2004) ("[T]his Court has never found a closed-ended pattern where the predicate acts spanned fewer than two years . . . . [W]hile two years may be the minimum duration necessary to find closed-ended continuity, the mere fact that predicate acts span two years is insufficient, without more, to support a finding of a closed-ended pattern.")  The Complaint also fails to plead open-ended continuity, which requires demonstration of a "threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 242 (2d Cir. 1999).  Because the allegations focus narrowly upon defendants' plan to collect the assessment and complete the renovations, and suggest no "continuing purpose" beyond those objectives, the Complaint does not plead a "threat of continuing criminal activity."  *See First Capital Asset Management*, 385 F.3d at 180-81 (2d Cir. 2004); *Calka*, 2000 WL 557266 at *8.  Thus, aside from the failure to allege predicate activity, the RICO claims also fail because the Complaint does not plead a "pattern" of such activity.

Because the complaint fails to plead any predicate racketeering activity or a "pattern" of such activity, it is not necessary to analyze the remaining RICO elements. Pu's RICO claims are dismissed.  *See Moss*, 719 F.2d at 17 (complaint must allege all seven elements of a RICO violation).

Pu's FDCPA claims also fail.  To pick just one deficiency, he has not pleaded facts to show that any of the defendants are "debt collectors" within the meaning of the statute.  *See Williams v. Citibank, N.A.*, 565 F. Supp. 2d 523, 528 (S.D.N.Y. 2008) (dismissing complaint where plaintiff failed to "allege facts indicating that either

9

defendant was a 'debt collector,' as is necessary to state a claim [under the FDCPA]"). The allegations do not show that it is any defendant's "principal purpose" to collect debts, or that any defendant "regularly collects or attempts to collect . . . debts owed . . . or due *another*."  15 U.S.C. § 1692a(6) (defining "debt collector") (emphasis added); *see Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56 (2d Cir. 2004) ("The FDCPA establishes two alternative predicates for 'debt collector' status- engaging in such activity as the 'principal purpose' of the entity's business and 'regularly' engaging in such activity."). Therefore, the FDCPA claims are also dismissed. *See Williams*, 565 F. Supp. 2d at 530.

Having dismissed the RICO and FDCPA claims, which form the only basis for federal jurisdiction in this case, the Court must determine whether to exercise supplemental jurisdiction to reach the merits of Pu's state law claims. Generally, where federal claims are dismissed at an early stage, courts decline supplemental jurisdiction and dismiss pendant state law claims without prejudice. *See Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998). Courts retain discretion, however, to depart from this general practice where the circumstances so warrant. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) ("[T]he district court may, at its discretion, exercise supplemental jurisdiction over state law claims even where it has dismissed all claims over which it had original jurisdiction . . . ."). The analysis requires that courts weigh the "values of judicial economy, convenience, fairness, and comity." *Parker, PPA v. Della Rocco*, 252 F.3d 663, 667 (2d Cir. 2001) (*quoting Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Here, those factors argue in favor of exercising supplemental jurisdiction, because Pu's state law claims arise from the same core facts as

the federal claims and, like the federal claims, lack merit. *See Kashelkar v. Bluestone*, 2007 WL 2809874, at *2 (S.D.N.Y. Sept. 26, 2007) (Swain, J.) ("[I]t is appropriate to exercise supplemental jurisdiction to rule on the merits of Plaintiff's state claims notwithstanding the dismissal of the federal claims, because all of the claims arise from the same set of operative facts and are plainly lacking in merit, and because the interests of justice would not be served by requiring Defendants to oppose those claims in new state court litigation."). Allowing Pu another opportunity to press his frivolous case against defendants in state court would contravene principles of judicial economy, fairness, and sound judgment. His state law claims, like the RICO and FDCPA claims, are premised on the allegation that defendants violated the Association's by-laws, (Compl. ¶¶ 75-118.),[4] an argument that both Judge Ellis and this Court have now rejected. To avoid further waste of judicial resources, the Court exercises its discretion under 28 U.S.C. § 1367 to dismiss the state law claims on their merits. *See Kashelkar*, 2007 WL 2809874 at *2.

## CONCLUSION

For the reasons stated, defendants' motions to dismiss are granted. The Complaint is dismissed in its entirety, with prejudice. The Clerk of the Court is directed to enter judgment in favor of defendants and to close this case.

---

[4] The only exception is a trespass claim appended to the end of the complaint. (Compl. ¶¶ 119-121.) That claim fails because Pu does not allege that defendants ever entered his apartment without his consent. Golonka v. Plaza at Latham LLC, 704 N.Y.S.2d 703, 706 (N.Y. App. Div. 2000) ("[A] person entering upon the land of another *without permission*, whether innocently or by mistake, is a trespasser.") (emphasis added).

SO ORDERED.

Dated: New York, New York
       March 9, 2010

_____

Richard J. Holwell
United States District Judge

12